Rogers, Circuit Judge, concurring:
I concur that the Unions have Article III standing to challenge the decision of the Secretary of Transportation approving the permit application of Norwegian Air International Limited to fly between the United States and foreign countries. Op. at 788-89. I also concur that the plain text of 49 U.S.C. § 41302(2)(B) did not require the Secretary to make a "public interest" finding in approving the permit application. Op. at 790-92. Although I concur that Article 17 bis of the Air Transport Agreement does not provide an independent basis for denying a permit application, Op. at 789-91, I write separately to clarify that Article 17 bis has both an immediate role in the permit approval process, through the Secretary's consideration of a permit application and imposition of terms for service under a permit, and a continuing role once a permit becomes operational, through (at least) action by the referenced Joint Committee.
The preamble to the Air Transport Agreement between the United States and the European Community states that the Agreement was intended not only to promote competition among airlines, but also to ensure that "all sectors of the transport industry, including airline workers," would "benefit" under the new "liberalized" regime. 2007 Agreement pmbl. The 2010 Protocol amending the Agreement added Article 17 bis. Article 17 bis consists of two paragraphs: The first paragraph states that "[t]he opportunities created by the Agreement are not intended to undermine labour standards or the labour-related rights and principles contained in the Parties' respective laws." 2010 Protocol art. 4. The second paragraph implements the first, instructing that "[t]he principles in paragraph 1 shall guide the Parties as they implement the Agreement, including regular consideration by the Joint Committee" of the Agreement's "social effects." Id. (emphases added).
Based on its plain text, Article 17 bis can provide a basis for imposing conditions in connection with the Secretary's consideration of an application for a permit and thereafter, if an application is approved pursuant to the Secretary's authority under 49 U.S.C.§ 41305(b) to "impose terms for providing foreign air transportation under the permit." The reference to "implement" in paragraph 2 can encompass both the Secretary's consideration of a permit application and the terms of the permit to be issued pursuant to approval of the application. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961) (defining "implement" as "to give practical effect to and ensure of actual fulfillment by concrete measures"); OXFORD ENGLISH DICTIONARY (2 ed. 1989) ("[T]o complete, perform, carry into effect (a contract, agreement, etc.)"). Additionally, given that "[t]he participle including typically indicates a partial list," BLACK'S LAW DICTIONARY 777 (10th ed. 2014), the use of "including" in paragraph 2 indicates that the Joint Committee is not the only mechanism for vindicating "high labour standards" and "labour-related rights." Indeed, the Secretary's action in the instant case accords with this interpretation. It is undisputed that the Secretary has authority to impose terms for providing service under the permit and did so here. And in considering Norwegian Air's application for a permit, the Secretary expressly relied on voluntary commitments made by its Chief Executive Officer. Dep't of Transp. Final Order 2016-11-22 at 4-5 & n.17 (Dec. 2, 2016) ("Final Order"); Letter of Bjorn Kjos, Chief Exec. Off'r., Norwegian Air, Ex. 1 to Mot. of Norwegian Air Int'l Ltd. for Leave to File and Expedited *794 Treatment, DOT-OST-2013-0204-0203 (June 1, 2015).
During the Department of Transportation's consideration of Norwegian Air's application for a permit, the Unions requested conditions be placed on Norwegian Air's permit "to ensure that its operations are consistent with Article 17 bis "; "[t]hese conditions could include that [Norwegian Air's] aircrew will (1) be based in Ireland; (2) be employed on contracts with an Irish company that will be governed by Irish employment and social security laws; and (3) have the right to choose a representative for collective bargaining purposes." Objection of Labor Parties to Order to Show Cause, DOT-OST-2013-0204-13281 (May 16, 2016) at 38. The Unions now contend that the failure to place these terms on Norwegian Air's permit was arbitrary and capricious, specifically that "[b]y failing to address their requested conditions at all, much less whether such terms would be consistent with the intent expressed in Article 17 bis , DOT failed to address 'an important aspect of the problem.' " Pet'rs' Br. 33-34 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ).
The Secretary acknowledges that the "Department of Transportation did not expressly address petitioners' request" for conditions, Resp't's Br. 33, but maintains that the concerns underlying the Unions' conditions were addressed during the Department's consideration of Norwegian Air's application. Id. at 40-41. In fact, the administrative record makes clear that the serious and sensitive labor issues of concern to the Unions were explored and that considerable attention was focused on Norwegian Air's business model and its potential impact on airline employees. Final Order at 4; see, e.g., Answer of Allied Pilots Ass'n to Application of Norwegian Air Int'l Ltd., DOT-OST-2013-0204-0006 (Dec. 20, 2013); Reply of Norwegian Air Int'l Ltd., DOT-OST-2013-0204-043 (Feb. 21, 2014). In granting the permit application, the Secretary considered "the totality of the record." Id . at 5. Further, to the extent the Unions were concerned that Norwegian Air would hire through employment agencies under contracts "governed by the laws of a country other than the carrier's licensing country" and deprive its employees of a "collective say over their wages and working conditions," Joint Reply Comments of Air Line Pilots Ass'n, DOT-OST-2013-0204-0161 (Aug. 25, 2014) at 10-11, the Secretary's reliance and expectation Norwegian Air would implement its voluntary commitments, consistent with law, suggests these concerns underlying the Unions' requests were considered.
Although it cannot be gainsaid that the Secretary should have explained his reasons for not including the Unions' timely and germane conditions in the permit, cf. BNP Paribas Energy Trading GP v. FERC , 743 F.3d 264, 270 (D.C. Cir. 2014), this is not a case where the Secretary "entirely failed to consider an important aspect of the problem," State Farm , 463 U.S. at 43, 103 S.Ct. 2856. Nor do the Unions make that precise argument, instead focusing on the Secretary's failure to consider their requested permit conditions. See Pet'r's Br. 33-34. Under the circumstances, the Unions' immediate objection to non-inclusion of their conditions as terms in Norwegian Air's permit fails. But there remains another avenue by which the Unions can potentially obtain additional protections for labor interests and rights during the operational phase of the permit-by requesting action by the Joint Committee, see 2010 Protocol art. 4, para. 2.
Sentelle, Senior Circuit Judge, concurring:
Because I agree with the majority that the standing question in this case is governed *795 by controlling precedent in International Brotherhood of Teamsters v. U.S. Department of Transportation , 724 F.3d 206 (D.C. Cir. 2013), I concur in the opinion of the court. Because I disagree with the International Brotherhood opinion, I write separately to express my belief that if we were writing on a clean slate, we should dismiss for want of standing rather than denying the petition on its merits.
Both International Brotherhood and the present case depend on the application of our competitor standing precedents. I have no problem with the proposition that the competitors of a regulated entity have standing to challenge the application or relaxation of regulations affecting their competitor. My difficulty is that neither the union in International Brotherhood nor the union in the present controversy is a competitor of the regulated entity. Unions do not compete with airlines. Airlines compete with airlines.
Although the majority today, relying on International Brotherhood and earlier cases, asserts that the actions of the government cause putative harm to the petitioner, this does not appear to me to be the case. The possible future harm to the union members in each instance is caused, not by the actions of the government, but by the actions of a third party who is not the competitor of the petitioner. Cf. Lujan v. Defenders of Wildlife , 504 U.S. 555, 561-62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
But, again, we do not write on a clean slate, and given the precedential force of the case decided by the court, I join the court's decision.